UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN K.,<br>   *Plaintiff,*<br><br>   v.<br><br>MARTIN O'MALLEY,<br>  Commissioner of Social Security,<br>   *Defendant.* | No. 3:22-cv-1304 (JAM) |

ORDER DENYING PLAINTIFF'S MOTION TO REVERSE
AND GRANTING MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER
OF SOCIAL SECURITY

    Plaintiff claims that he is disabled and unable to work owing to mental impairments.[1] He has brought this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security, who denied his claim for Title II social security disability insurance and Title XVI supplemental security income.[2] The Commissioner has moved to affirm the decision.[3] For the reasons discussed below, I will deny the Plaintiff's motion to reverse and grant the Commissioner's motion to affirm.[4]

BACKGROUND

    The following facts are taken from transcripts provided by the Commissioner.[5] In March 2020, Plaintiff filed an application for disability insurance benefits under Title II of the Social

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify and reference Plaintiff solely by first name and last initial. *See* Standing Order – Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).
[2] Doc. #1.
[3] Doc. #24.
[4] This action was initially filed against Kilolo Kijakazi as the Acting Commissioner of the Social Security Administration. On December 20, 2023, Martin O'Malley replaced Kijakazi as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Martin O'Malley for Kilolo Kijakazi in this action.
[5] *See* Doc. #15. Page references to the transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. X).

1

Security Act as well as an application for supplemental security income under Title XVI of the Social Security Act.[6] His alleged disability began January 15, 2019.[7] The Social Security Administration ("SSA") initially denied Plaintiff's claims in June 2020, and again upon reconsideration in October 2020.[8] Plaintiff then filed a written request for a hearing.[9]

Plaintiff appeared with counsel and testified before an ALJ in a July 2021 hearing.[10] A vocational expert also testified.[11] In August 2021, after obtaining additional medical records from a treating physician, the ALJ entered a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act.[12] The SSA Appeals Council denied Plaintiff's request for review in August 2022.[13] Plaintiff then filed this federal court action in October 2022.[14]

To qualify as disabled, a claimant must show that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). The SSA engages in the following five-step sequential evaluation process to determine whether a claimant is disabled:

---

[6] Doc. #15 at 211-22 (Tr. 207-18).
[7] *Id.* at 211 (Tr. 207).
[8] *Id.* at 126-28 (Tr. 122-24); *id.* at 145-46 (Tr. 141-42).
[9] *Id.* at 147-48 (Tr. 143-44).
[10] *Id.* at 45-64 (Tr. 41-60).
[11] *Id.* at 65-90 (Tr. 61-86).
[12] *Id.* at 20-39 (Tr. 16-35).
[13] *Id.* at 5-10 (Tr. 1-6).
[14] Doc. #1.

>(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019); *see* 20 C.F.R. § 404.1520(a)(4). In applying this framework, if an ALJ finds a claimant to be disabled or not disabled at a particular step, the ALJ may make a decision without proceeding to the next step. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving the case at Steps One through Four; the burden shifts to the Commissioner at Step Five to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 15, 2019, the alleged onset date.[15] At Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: depressive disorder and anxiety disorder.[16] The ALJ also noted that Plaintiff had a right humeral/right shoulder fracture and a history of obesity but determined that those conditions were non-severe impairments.[17] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of

---

[15] Doc. #15 at 23 (Tr. 19).
[16] *Ibid.*
[17] *Id.* at 23-24 (Tr. 19-20).

3

impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[18]

The ALJ then found that Plaintiff has a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain nonexertional limitations: simple work for two hours at a time, over eight and forty-hour periods with only occasional interactions with the general public and where there are only simple changes in routine.[19]

At Step Four, the ALJ determined that Plaintiff was unable to perform any past relevant work.[20] At Step Five, the ALJ relied on the testimony of a vocational expert who opined that a person of Plaintiff's age (53 as of the onset date) and education (at least high school), work background, and RFC could perform the requirements of an industrial cleaner, kitchen helper, and packager, positions which collectively represented approximately 243,000 jobs in the national economy.[21] The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act since January 15, 2019.[22]

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the

---

[18] *Id.* at 24 (Tr. 20).
[19] *Id.* at 27 (Tr. 23).
[20] *Id.* at 35 (Tr. 31).
[21] *Id.* at 36-38 (Tr. 32-34).
[22] *Id.* at 38-39 (Tr. 34-35).

Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).[23]

### *Failure to develop the record*

Plaintiff first argues that the ALJ did not adequately develop the record. An ALJ, "unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The ALJ has a duty "to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). But the duty to develop the record is not limitless. An ALJ has no duty to develop a history outside the relevant period unless there are "obvious gaps or inconsistencies" in the record. *See O'Connell v. Colvin*, 558 F. App'x 63, 64 (2d Cir. 2014).

Plaintiff takes issue with the ALJ's failure to solicit a medical source statement from four of his treating sources—Drs. David Riccio, Anace Said, Benjamin Zigun, and LCSW Pamela Linder.[24] In order to fully develop the record, a medical source statement is not necessarily required, so long as "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013). Accordingly, the Second Circuit has concluded that an ALJ was not under an obligation to further develop the record where the record contained a partially relied-upon opinion from a consultative examiner and the treatment notes from the plaintiff's doctors. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013). So too the Second Circuit has declined to

---

[23] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[24] Doc. #19-2 at 2.

find error where an ALJ disregarded the treating physician's opinion—the only treating source opinion—and made an RFC determination based in part on the treating source's notes, which contained descriptions of the claimant's symptoms and contemporaneous medical assessments sufficient to assess the claimant's ability to perform substantial gainful activity. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017).

Plaintiff argues that the medical records from physicians and clinicians treating his physical conditions are unrevealing as to his function-by-function capacities.[25] He points to a June 2021 visit with Dr. Riccio in which he was diagnosed with anxiety, depression, idiopathic gout, esophageal dysmotility, falling, mixed hyperlipidemia, hyperglycemia, essential hypertension, memory loss, and hypothyroidism.[26] He argues that the ALJ's failure to obtain a medical source statement from Dr. Riccio reflecting these ailments led the ALJ to wrongfully determine that Plaintiff could perform a full range of work at all exertional levels. But these are the same conditions documented in the notes of APRN Philip Frick, another of Plaintiff's treating physicians, from which the ALJ did obtain and rely on multiple medical source statements.[27] And Plaintiff does not specify what gaps, if any, he believes Dr. Riccio's statement would help fill.[28]

The record in this case otherwise contains over 2,500 pages of medical records, including treatment notes from Drs. Riccio, Said, Zigun, LCSW Linder, and other treating sources, reports

---

[25] *Id.* at 3.
[26] *Id.* at 9.
[27] *See* Doc. #15 at 32-34 (Tr. 28-30).
[28] *See* Doc. #15-3 at 313 (Tr. 3309) (October 2020 evaluation by APRN Frick noting Plaintiff's history of falls and low moods, feeling tired, depression, anxiety, gout, hypothyroid, lyme disease, low b12, broken humerus); *id.* at 318 (Tr. 3314) (November 2020 evaluation by APRN Frick noting same medical history); *id.* at 322 (Tr. 3318) (December 2020 visit by APRN Frick noting same); *id.* at 330 (Tr. 3326) (January 2021 evaluation by APRN Frick noting same absent recent falls); *id.* at 334 (Tr. 3330) (March 2021 visit by APRN Frick noting same); *id.* at 340 (Tr. 3336) (April 2021 visit by APRN Frick noting same); *id.* at 346 (Tr. 3342) (May 2021 visit by APRN Frick noting same); *id.* at 351 (Tr. 3347) (June 2021 visit by APRN Frick noting same).

from two state agency consultants (Drs. Gerald Fette and Marie Turner), emergency department records, and Plaintiff's own testimony.[29] Moreover, the ALJ took into account treating notes from a variety of Plaintiff's treating sources when making his assessment of Plaintiff's capacities, citing those notes in support of his finding that Plaintiff was limited to performing simple work for two hours at a time.[30] Based on all the above, I cannot conclude that the ALJ erred in not requesting a medical source statement from all of Plaintiff's treating clinicians. *See Bonazelli v. Saul*, 2021 WL 791176, at *3 (D. Conn. 2021) (ALJ did not fail to adequately develop the record despite lacking medical source statements or function-by-function assessments from several treating physicians where record contained detailed treatment notes describing a range of motion and mental health status).

Plaintiff further faults the ALJ for relying on medical source statements that by the time of the hearing on July 14, 2021 were approximately one year out of date.[31] Certainly an ALJ should not rely on stale medical opinions "rendered before some significant development in the claimant's medical history." *Sonia N. B. A. v. Kijakazi*, 2022 WL 2827640, at *5 (D. Conn. 2022). But a medical opinion is not stale "merely because it pre-dates other evidence in the record, where the subsequent evidence does not undermine the opinion evidence." *Ibid.* (citing *Steve P. v. Comm'r of Soc. Sec.*, 2021 WL 307566, at *5 (W.D.N.Y. 2021)).

Plaintiff does not point to any evidence in the record showing that his condition changed in a meaningful way in the intervening year. Indeed, APRN Frick's treatment notes for Plaintiff show that Plaintiff's condition remained relatively the same from late 2020 through June 2021.[32]

---

[29] *See generally* Docs. #15; #15-1; #15-2; #15-3.
[30] *See* Doc. #15 at 29 (Tr. 25) (referencing Dr. Riccio's notes); *id.* at 32 (Tr. 28) (referencing exhibits containing notes of Drs. Said, Zigun, and LCSW Linder).
[31] Doc. #19-2 at 2.
[32] *See, e.g.*, *supra* note 28 (treatment notes from APRN Frick documenting generally consistent medical status from December 2020 through June 2021); *infra* note 40 (treatment notes from January 2020 through June 2021 documenting consistent levels of attention, concentration, and memory).

7

And the ALJ also cited a July 2021 opinion from LCSW Christina Voonasis, another of Plaintiff's medical providers, which even Plaintiff concedes is "non-stale."[33]

Moreover, at oral argument counsel for Plaintiff indicated that the only meaningful change in Plaintiff's medical status between July 2020 and July 2021 was his treatment with the drug Spravato. But the Spravato treatments would have only helped *improve* the Plaintiff's mental health.[34] And so there is no reason to believe that the ALJ's reliance on medical opinions from 2020 failed to capture any relevant changes in Plaintiff's condition that would support his claim for disability. In light of all the above, I conclude that the ALJ did not breach his duty to adequately develop the record.

### *Substantial evidence for the RFC*

Plaintiff next argues that substantial evidence does not support the ALJ's determination of Plaintiff's RFC. He first takes issue with the ALJ's finding that Plaintiff would be limited to "simple work for 2 hours at a time."[35] Plaintiff points to APRN Frick's July 2020 assessment that found Plaintiff could not remember short and simple instructions for 10% of an eight-hour work day or complete a normal workday without interruptions from psychologically-based symptoms 15% of the time.[36] He argues that these findings contradict the ALJ's conclusion that Plaintiff could work consistently for 2-hour blocks.

But the ALJ found APRN Frick's July 2020 opinion to be "of little persuasiveness," observing that "the overall evidence of record fails to support the degree of limitations . . . purported."[37] The ALJ found instead that Plaintiff's "mental status examinations reveal that he

---

[33] *See* Doc. #15 at 30 (Tr. 26); Doc. #19-2 at 2 n.1.
[34] *See, e.g.*, Doc. #15 at 30 (Tr. 26) ("[Plaintiff] indicated that his Spravato medication was helping with his symptoms."); Doc. #15-3 at 356 (Tr. 3352) ("With twice weekly Spravato treatments . . . [Plaintiff's] mental health did seem to gradually improve.").
[35] Doc. #19-2 at 14.
[36] *Ibid.*
[37] Doc. #15 at 33 (Tr. 29).

had intact recent and remote memory skills"[38] as well as "normal attention and concentration skills."[39] Indeed evaluations from Plaintiff's treatment providers consistently documented normal or good memory and attention skills, coherent thought processes, and "grossly intact" insight and judgment, all of which support the ALJ's ultimate conclusion that Plaintiff could accomplish simple work for two hours at a time.[40] *See also Riddick v. Saul*, 2022 WL 784722, at *9 (E.D.N.Y. 2022) (observing that the 2-hour interval is considered standard for unskilled employment).

Plaintiff responds that the ALJ should not have substituted his own judgment for that of APRN Frick's in evaluating whether the medical evidence supported the conclusions in APRN Frick's July 2020 medical source report.[41] But an ALJ "bears the final responsibility for making RFC determinations. It follows from these basic principles that the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F. 4th 64, 78 (2d Cir. 2022) (citing 20 C.F.R. § 404.1527(d)(2)).

---

[38] *Id.* at 34 (Tr. 30).
[39] *Ibid.*
[40] *See* Doc. #15-1 at 581 (Tr. 1577) (January 2020 evaluation noting "[n]ormal mood and affect, [d]emonstrates good memory recent and remote of events, [a]lert and oriented, [d]isplays appropriate judgment and insight"); *id.* at 591 (Tr. 1587) (March 2020 evaluation noting "[c]oherent, logical, goal directed" thought process and "[n]ormal attention and concentration"); *id.* at 938 (Tr. 1934) (May 2020 evaluation with LCSW Linder noting coherent, directed, circumstantial speech and thought process and that Plaintiff attended therapy group without difficulty); Doc. #15-2 at 768 (Tr. 2764) (July 2020 evaluation noting "[c]oherent, logical, goal directed" thought process and intact "[r]ecent and remote memory" with "[n]ormal attention and concentration"); Doc. #15-3 at 113-15 (Tr. 3109-11) (August 2020 evaluation by LCSW Voonasis finding Plaintiff has good abilities in following work rules, remembering and carrying out simple job instructions); *id.* at 318 (Tr. 3314) (November 2020 evaluation by APRN Frick noting "grossly intact" attention and concentration, organized thoughts, "grossly intact" insight and judgment); *id.* at 330 (Tr. 3326) (January 2021 evaluation by APRN Frick noting Plaintiff reports Spravato treatment is going well and has "grossly intact" attention/concentration, organized thought, "grossly intact" insight and judgment); *id.* at 344 (Tr. 3340) (April 2021 evaluation noting "organized" thoughts, "grossly intact" insight and judgment, "grossly intact" attention and concentration); *id.* at 351 (Tr. 3347) (June 2021 evaluation noting "grossly intact" attention and concentration, "improved" affect, "organized" thought, "grossly intact" insight and judgment).
[41] Doc. #19-2 at 19.

Plaintiff also suggests that the ALJ erred by not giving APRN Frick's July 2020 medical statement controlling weight, as APRN Frick was Plaintiff's treating physician at the time.[42] Under the "treating physician rule," an ALJ was required to "give controlling weight to a treating source's opinion, so long as it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record." *Juan T. v. Kijakazi*, 2021 WL 4947331, at *5 (D. Conn. 2021). But the new regulations, which apply to claims filed on or after March 27, 2017, "undo the requirement provided certain conditions are met, to give a medical source statement from the treating physician controlling weight." *Angelica M. v. Saul*, 2021 WL 2947679, at *6 (D. Conn. 2021); *see* 20 C.F.R. § 404.1520c(a) (for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources"). Because Plaintiff's claim was filed well after March 2017, the ALJ was not required to give the treating source statements controlling weight.

Plaintiff responds that the ALJ still should have gone through each *Burgess* factor in explaining why he declined to give controlling weight to APRN Frick's July 2020 medical source statement.[43] But the new regulations note that the "most important factors [the agency] consider[s] when [they] evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). The agency "may, but [is] not required to, explain how [it] considered" other factors including the medical source's relationship with the claimant or the specialization of the medical source. 20 C.F.R. § 404.1520c(b)(2).

In finding that APRN Frick's July 2020 opinion was of little persuasiveness the ALJ explained that "the overall evidence of record fails to support the degree of limitations Mr. Frick

---

[42] *Id.* at 18-22.
[43] *Id.* at 20 (faulting the ALJ for not explicitly applying the *Burgess* factors).

purported" and observed that Plaintiff "presented with no psychosis in the evaluation setting, . . . had intact recent and remote memory skills, . . . normal attention and concentration skills, . . . and appropriate insight and judgment."[44] These findings, bolstered by citations to the underlying medical records, satisfied the ALJ's burden under the applicable regulations.

Plaintiff faults the ALJ for "devot[ing] no discussion whatsoever" to LCSW Voonasis's July 5, 2021 treatment summary.[45] In fact, the ALJ explicitly considered the July 2021 evaluation, noting that "[LCSW] Voonasis reported being optimistic that continued treatment . . . would yield further improvements in the claimant's level of distress and ability to maintain functioning."[46]

Plaintiff also argues that the ALJ erred in finding persuasive the opinions of Dr. Janine Swanson, who had never clinically examined or "laid eyes" on Plaintiff.[47] But as the Commissioner correctly notes, Dr. Swanson is a state agency consultant on whose opinion the ALJ is entitled to rely.[48] *See Ferrara v. Saul*, 2021 WL 1239948, at *7 (D. Conn. 2021) (an ALJ is entitled to consider "as persuasive evidence the reports of the State agency physicians"). Indeed, under the new regulations ALJs "must" consider "prior administrative medical findings" such as Dr. Swanson's. 20 C.F.R. § 404.1513a

(b)(1).

Plaintiff expresses doubt about the ALJ's finding that Plaintiff could work at any exertional level from sedentary to very heavy. He points to his history of near-morbid obesity and unexplained falls, suggesting that he should not carry heavy weights as suggested by the

---

[44] Doc. #15 at 33-34 (Tr. 29-30).
[45] Doc. #19-2 at 22.
[46] Doc. #15 at 30 (Tr. 26).
[47] Doc. #19-2 at 23.
[48] Doc. #15 at 25 (Tr. 21) (explaining Dr. Swanson is a state agency consultant).

ALJ.[49] But the ALJ evaluated Plaintiff's documented obesity and concluded that it was a non-severe impairment.[50] The ALJ additionally noted that due to a "lack of signs and laboratory findings from an acceptable medical source to establish the claimant's obesity, . . . obesity is not a severe medically determinable impairment of the claimant."[51]

The ALJ similarly concluded that Plaintiff's Parkinsonism—which was suspected to be behind his multiple falls—was not a medically determinable impairment.[52] He noted that in an examination by Dr. Paul Greene in July 2021 Plaintiff "presented with normal muscle tone . . . intact coordination and a normal gait."[53] He also cited Dr. Greene's conclusion that Plaintiff did not present "any signs of Parkinsonism."[54] The ALJ concluded that "[a] physical or mental impairment must be established by medical evidence, . . . not only by the claimant's statements."[55]

In addition, as to Plaintiff's concern about carrying heavy weights, the ALJ in fact asked the vocational expert whether further limitations to lifting or carrying 50 pounds occasionally and 25 pounds generally would affect the described representative occupations, to which the vocational expert responded in the negative.[56] All in all, I am not convinced that the ALJ's RFC determination was erroneous or otherwise unsupported by substantial evidence.

---

[49] Doc. #19-2 at 9-10.
[50] Doc. #15 at 23 (Tr. 19); *see also id.* at 99-100 (Tr. 95-96) (report from Dr. Fette noting that the "claimant's moderate obesity has been considered in the analysis of his other impairments" and concluding that Plaintiff's impairments are non-severe).
[51] *Id.* at 24 (Tr. 20).
[52] *Ibid*.
[53] *Ibid.*
[54] *Ibid.*; *see also* Doc. #15-3 at 365 (Tr. 3361).
[55] Doc. #15 at 24 (Tr. 20).
[56] *Id.* at 37 (Tr. 33) (the ALJ was careful to note that he "stop[ped] short of adding these limitations to the determined [RFC] as the record fails to support that the claimant has had this further level of ongoing functional limitation during the period at issue").

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion to reverse (Doc. #19) and GRANTS the Commissioner's motion to affirm (Doc. #24).

The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 25th day of March 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge